IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| ALICIA DEAVERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 3:14CV365–HEH |
| HOMERO VASQUEZ and | ) |
| ROGER L. HARRIS, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION
(Defendant Homero Vasquez's Motion for Summary Judgment)

Alicia Deavers ("Deavers" or "Plaintiff") brought this lawsuit pursuant to 42 U.S.C. § 1983 alleging a number of Fourth Amendment violations and related common law claims against the Sheriff of Spotsylvania County, Roger L. Harris ("Sheriff Harris"), and one of his deputies, Homero Vasquez ("Deputy Vasquez"). The underlying incident involves Deputy Vasquez's alleged improper arrest of Deavers for public intoxication and his alleged use of excessive force in effectuating that arrest. Deputy Vasquez now moves for summary judgment.[1] The parties have submitted briefs supporting their respective positions. The Court will dispense with oral argument, finding that it will not aid in the decisional process.

After close review, the Court concludes that qualified immunity shields Deputy Vasquez from liability for excessive force. The record evidence is insufficient to prove

---

[1] Sheriff Harris has also moved for summary judgment (ECF No. 34), simply piggybacking on to Deputy Vasquez's motion. (Harris Mem. in Supp. of Mot. for Summ. J. ¶ 6, ECF No. 35.) The Court will dispose of Sheriff Harris's motion by separate order.

that Deputy Vasquez violated a clearly established constitutional right—namely, that of being free from unduly tight or forceful handcuffs. Accordingly, for the reasons explained herein, Deputy Vasquez's Motion for Summary Judgment will be granted with respect to Plaintiff's 42 U.S.C. § 1983 excessive force claim. Plaintiff's state law claims for malicious prosecution and battery will be remanded back to the Circuit Court for Spotsylvania County, Virginia, pursuant to 28 U.S.C. § 1367(c)(3).

## I. BACKGROUND

At the outset, the Court notes that once again, Plaintiff has failed to comply with the Local Rules of this Court and the Federal Rules of Civil Procedure. As required by E.D. Va. Loc. R. 56(B) and consistent with Fed. R. Civ. P. 56(c)(1), Deputy Vasquez identified the undisputed material facts with citation to particular parts of the record in the memorandum in support of his motion, but Plaintiff neglected to do the same in her response. Plaintiff's brief in opposition to Deputy Vasquez's motion includes a section entitled "Background and Objections to Defendants' Recited Undisputed Facts", and attaches Exhibit B, Plaintiff's own affidavit purportedly setting forth "[a] specific point-by-point rebuttal to Defendants' Statement of Material Facts [Not in Dispute]". (Pl.'s Opp'n to Defs.' Mot. for Summ. J. ("Opp'n Mem.") 1, n.1, ECF No. 36.) But Plaintiff fails to cite with particularity to those portions of the record that would support the existence of a genuine dispute of material fact.

Under the Local Rules, the Court may accept those facts not disputed to be admitted. It may also assume that those facts not disputed by reference to record evidence are admitted by Plaintiff. E.D. Va. Loc. R. 56(B). This practice is consistent

2

with the 2011 amendments to the Federal Rules of Civil Procedure, which require the parties to support their factual assertions by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c); *see also Campbell v. Verizon Virginia, Inc.*, 812 F. Supp. 2d 748, 759 n.5 (E.D. Va. 2011) (discussing 2011 amendments to Rule 56), *aff'd* 474 Fed. Appx. 167, 2012 U.S. App. LEXIS 12311 (4th Cir. June 18, 2012). Because at the summary judgment stage, a court must construe the facts in the light most favorable to Deavers as the non-moving party, this Court has made a reasonable effort to search the record in an attempt to identify those facts that are genuinely not in dispute. Nevertheless, where appropriate, the Court reserves the right to consider Deputy Vasquez's statement of the facts as undisputed, as permitted by the Local Rules and Fed. R. Civ. P. 56(e). Viewing the evidence through such lens, the following narrative represents the established facts for purposes of resolving Deputy Vasquez's motion for summary judgment.

### *Factual Background*

At approximately 12:32 a.m. on May 18, 2013, Deputy Vasquez, a Spotsylvania County Sheriff's Deputy, received a complaint of loud noise from a party in the garage at Plaintiff's residence. (Aff. of Alicia Deavers ("Pl. Aff.") ¶ 1, 4, ECF No. 36-2; Incident Details Report ("Ex. A") HV-17–HV-18, ECF No. 36-1; Master Incident Field Report, ("Ex. 1") HV-2, ECF No. 33-1[2]; Vasquez Dep. 16:17-19, ECF No. 32-2.) Upon his arrival at 12:58 a.m., Deputy Vasquez observed through the open door of Plaintiff's

---

[2] Two exhibits to Deputy Vasquez's Memorandum in Support of his Motion for Summary Judgment were later filed in redacted form, as the original versions inadvertently contained personal identifiers.

3

single-car garage approximately ten or fifteen individuals. (Ex. A HV-18; Aff. of Mike Smith ("Smith Aff.") ¶ 1, ECF No. 36-3; Vasquez Dep. 17:16-19; Pl. Dep. 59:6-7, ECF No. 32-4.) Deavers identified herself as the renter of the home. (Pl. Aff. ¶ 4.)

Deputy Vasquez asked Plaintiff to go inside the house and to ask the other guests to do the same, but Deavers declined to do so. (Vasquez Dep. 16:20–17:2; Vasquez Resp. to Pl. Interrog. #6, ECF No. 36-4.) Two male partygoers began to argue with Deputy Vasquez, refusing to comply with his request to end the party and go inside. (Pl. Aff. 9; Ex. 1 HV-3; Vasquez Dep. 21:22-25.) Another male, who appeared intoxicated, increased the volume of the music despite Deputy Vasquez's requests to curb the noise. (Vasquez Dep. 18:1–19:5, 20:18-20; Ex. 1 HV-2.) At some point during these exchanges, Deavers went inside to phone a Spotsylvania County detective with whom she was personally acquainted. (Pl. Aff. ¶ 15; Vasquez Dep. 22:18-23; 23:1-15.)

Deputy Vasquez asked the partygoers to have Deavers come back outside to avoid any further escalation of the situation. (Pl. Aff. ¶ 17; Vasquez Dep. 23:5-13; Ex. 1 HV-3.) When the two males that initially argued with Deputy Vasquez began yelling, Deputy Vasquez called for a backup unit. (Vasquez Dep. 23:10-16; Ex. 1 HV-3; Pl. Aff. ¶ 18.) Because they heard yelling in the background of Deputy Vasquez's call, the units responded with lights and sirens. (Vasquez Dep. 23:15-18; Pl. Aff. ¶ 18.)[3]

Shortly thereafter, Plaintiff reappeared—still inside the garage, but visible to Deputy Vasquez. She continued to refuse to cooperate with the deputy's requests to tone the party down. (Vasquez Dep. 23:20–24:24; Ex. 1 HV-3.) And at the encouragement of

---

[3] Notably, six (6) additional units were required to get the incident under control. (Am. Compl. ¶ 6.)

her guests, Deavers initially refused, but eventually complied with Deputy Vasquez's order to step out of the garage. (*Id.*) Deavers was arrested at 1:06 a.m. for public intoxication. (Vasquez Dep. 24:20-25; Pl. Aff. ¶ 18.) In effectuating the arrest, Deputy Vasquez grabbed Plaintiff's right wrist and handcuffed her hands behind her back. (Ex. 1 HV-3.)

Deputy Vasquez's arrest of Deavers was captured on video. One of the partygoers began filming portions of the incident on a cell phone just before Deavers returned outside. (Video Attach. to Pl.'s Opp'n Mem. ("Video"), ECF No. 37; Smith Aff. ¶¶ 2, 5.) The video begins with one male partygoer arguing with Deputy Vasquez and ends once Deavers has been arrested and placed in handcuffs. (*Id.*) Just after the arrest, the same male that had become argumentative and tried to dissuade Plaintiff from returning outside to comply with Deputy Vasquez's request, attempted to insert his arm between Deavers and Deputy Vasquez. (Vasquez Dep. 24:6-9; 31:11-16.) Deputy Vasquez ordered the gentleman to step back and pushed him away with his left hand. (*Id.*) As Deavers was escorted to the squad car, she resisted and attempted to pull away from Deputy Vasquez.[4] (Vasquez Dep. 24:10-18.)

At 1:23 a.m., Deputy Vasquez transported Deavers to the magistrate. (Pl. Aff. ¶ 20; Ex. 1 HV-3.) Plaintiff continued in her attempts to pull away from Deputy Vasquez upon their arrival at the magistrate's office. (Vasquez Dep. 30:5-12.) Plaintiff appeared before the magistrate, and Deputy Vasquez reported his physical observations that

---

[4] Plaintiff's brief in opposition contends only that she did not resist arrest. (Pl.'s Opp'n Mem. 6-7.) Deputy Vasquez noted Plaintiff's resistance after she had been placed under arrest. (Vasquez Dep. 24:10-18.)

included Plaintiff's slurred speech, glassy, bloodshot eyes, and odor of alcohol on her person. (Pl. Aff. ¶ 8; Vasquez Resp. to Pl.'s Interrog. #6, Ex. D, ECF No. 36-4; Ex. 1 HV-2–HV-3.) A warrant was issued for Deavers for public intoxication. (Ex. 1 HV-3; Pl. Aff. ¶ 21.) The magistrate ordered her to be held until she was sober. (*Id.*) Later, Plaintiff was processed and received at the Rappahannock Regional Jail. (Pl. Aff. ¶ 24.) Her interactions with Deputy Vasquez ended once she was placed in a vehicle for transportation to a detention facility. (Pl. Aff. ¶ 22; Vasquez Dep. 30:23–31:3.) Throughout Deputy Vasquez's interactions with Plaintiff, she yelled and threatened to have her friends in the Spotsylvania County Sheriff's Office take adverse employment action against him for arresting her. (Vasquez Dep. 34:13-25; Ex. 1 HV-2–HV-3.)

Plaintiff admits she had consumed approximately five (5) glasses of wine over the course of the evening and had not eaten since lunch the day of her arrest. (Pl. Aff. ¶ 6; Pl. Dep. 62:1–63:21.) The officer who was responsible for conducting an inventory of Deavers's property at the regional jail wrote "intoxicated" on the signature line designated for the arrestee. (Pl. Aff. ¶ 24; Rappahanock Regional Jail Booking Inventory Form HV-40, ECF No. 32-6.) At 8:45 a.m., Plaintiff's blood alcohol content was .137 according to her Alco-Sensor results. (Rappahannock Regional Jail Release Form ("Ex. 5") HV-38, ECF No. 33-2.) She was not released from custody until 1:55 p.m. on May 18, 2013.[5] (*Id.*)

---

[5] Although a genuine dispute exists between the parties as to Plaintiff's level of intoxication, such dispute is immaterial for purposes of disposing of the § 1983 excessive force claim. (Pl.'s Aff. ¶ 8; Smith Aff. ¶ 3.)

According to Deavers, she experienced bruising on her arms, biceps, and wrists and lost feeling in her thumb for two days. (Pl. Dep. 24:23–25:1; Pl.'s Photos,[6] Ex. 7, ECF No. 32-7.) Although Plaintiff reports that she also had bruising on her ankles from being shackled, the record indicates that the operators of the jail van, not Deputy Vasquez, placed Plaintiff in leg restraints. (Pl. Dep. 25:13-25.) Deavers complained of these injuries at the Rappahanock Regional Jail, but never sought medical attention. (*Id.* at 25:2-12.) She reports no monetary damages. (*Id.* at 23:24-24:3.) At the time of the incident, Deavers was employed as a case manager by the Virginia Alcohol Safety Action Program. (*Id.* at 13:1-18.) Other than being transferred to a different jurisdiction, Deavers suffered no adverse employment action. (*Id.* at 13:15-25; Pl. Aff. ¶ 28; Pl.'s Opp'n at 4.)

### *Procedural Background*

Plaintiff initially filed suit in the Circuit Court for Spotsylvania County alleging four (4) causes of action against Deputy Vasquez and the Spotsylvania County Sheriff's Department: (1) common law malicious prosecution; (2) various theories of liability under 42 U.S.C. § 1983; (3) common law false imprisonment; and (4) common law battery (ECF No. 1-1). Defendants properly and timely removed the case to this Court on May 23, 2014 (ECF No. 1) and filed a Motion to Dismiss on May 29, 2014 (ECF No. 2). By order entered July 2, 2014 (ECF No. 11), this Court granted in part and denied in part

---

[6] Because the Court must view the record in the light most favorable to Deavers, the Court will assume the veracity of the photographs produced by Plaintiff. However, it must be noted that the Court has no means to authenticate that the bruised wrists in the photographs are actually Alicia Deavers's wrists. And furthermore, the photographs are not dated to enable confirmation that her bruised condition corresponds with the date of the incident or were proximately caused by Deputy Vasquez.

7

the motion to dismiss. The Spotsylvania County Sheriff's Department was dismissed as a defendant. The portions of Plaintiff's § 1983 claim in Count Two that alleged Plaintiff was arrested without probable cause and that Defendants illegally searched Plaintiff's cell phone were also dismissed, as well as the entirety of Count Four (common law false imprisonment). The motion to dismiss was denied with respect to the excessive force facet of Count Two and the entirety of Count Three (common law battery).[7]

Plaintiff sought and was granted leave of court to file an amended complaint (ECF Nos. 18, 22). Plaintiff's Amended Complaint (ECF No. 24) adds as a defendant the Sheriff of Spotsylvania County, Roger L. Harris, but only with respect to the surviving common law claims—Count One (malicious prosecution) and Count Three (battery). The amended complaint also adds facts arguably salient to Plaintiff's allegation that she was not intoxicated at the time of arrest. Deputy Vasquez and Sheriff Harris answered on September 11, 2014 (ECF No. 26) and September 15, 2014 (ECF No. 27), respectively. Sheriff Harris then moved to partially dismiss Plaintiff's Amended Complaint to the extent it sought punitive damages from him (ECF No. 28). This Court granted the motion, dismissing the punitive damages claims against Sheriff Harris on October 3, 2014 (ECF No. 30). That same day, Deputy Vasquez filed a Motion for Summary Judgment (ECF No. 31) as to all claims—even those claims previously dismissed by this

---

[7] The malicious prosecution claim in Count One was not at issue in the Motion to Dismiss.

Court.[8] Deputy Vasquez argues that probable cause existed to arrest Plaintiff, and the minimal force he used in arresting her was reasonable. Deputy Vasquez maintains that no constitutional violation occurred, but in any event, under the circumstances he is protected by qualified immunity.

## II. STANDARD OF REVIEW

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also* Fed. R. Civ. P. 56. The relevant inquiry in a summary judgment analysis is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. In reviewing a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party—in this case, Alicia Deavers. *Id.* at 255.

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly

---

[8] Although this Court's prior orders have indicated explicitly which of Plaintiff's claims survive, Deputy Vasquez's Memorandum in Support of his Motion for Summary Judgment presents arguments regarding the previously dismissed § 1983 claims of false arrest, malicious prosecution, and unlawful search. (Vasquez Mem. in Supp. Parts II-A, II-B, & II-D, ECF No. 32.) The only surviving claim under Count Two of Plaintiff's Complaint is her § 1983 claim for excessive force. (August 22, 2014 Order at 2 n.2, ECF No. 22; October 3, 2014 Mem. Order at 5, ECF No. 30.)

supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48 (emphasis in original). The court must grant summary judgment if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A "material fact" is one that might affect the outcome of a party's case. *Anderson*, 477 U.S. at 248; *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *see also Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001). A *genuine* issue concerning a *material* fact only arises when the evidence, viewed in the light most favorable to the nonmoving party, is sufficient to allow a reasonable jury to return a verdict in that party's favor. *See Anderson*, 477 U.S. at 248.

Furthermore, the nonmoving party must rely on more than conclusory allegations, "mere speculation," the "building of one inference upon another," the "mere existence of a scintilla of evidence," or the appearance of some "metaphysical doubt" concerning a material fact to defeat an otherwise properly supported motion for summary judgment. *Lewis v. City of Va. Beach Sheriff's Office*, 409 F. Supp. 2d 696, 704 (E.D. Va. 2006) (citations omitted). In meeting this burden, the nonmoving party must "go beyond the pleadings" and present affidavits or designate specific facts in depositions, answers to

interrogatories, and admissions on file to establish a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 324. The Court, of course, cannot weigh the evidence or make credibility determinations in its summary judgment analysis. *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004).

### III. DISCUSSION

"Qualified immunity protects government officials who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). The qualified immunity analysis involves two steps. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Generally, a court considers first whether a constitutional violation occurred, and second, when the court finds such a violation, whether the right violated was "clearly established." *Saucier*, 533 U.S. at 201; *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013). In performing this analysis, however, a court is not required to consider these two steps in any particular order. *Williams*, 716 F.3d at 805–06. A court may exercise its discretion to determine which of the two steps in the qualified immunity analysis "should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 806 (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). It goes without saying that if an officer did not violate any clearly established right, he is hardly in need of any immunity, and the analysis ends there. *Henry*, 652 F.3d at 531.

Qualified immunity shields an officer from suit when he makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances confronted. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). The

11

excessive force claim within Count Two is based on Plaintiff's allegation that Deputy Vasquez handcuffed her so tightly that she had bruises on her wrists and lost feeling in her right thumb for two (2) days following the arrest. (Opp'n Mem. 3, 9.) She claims he grasped her forcefully and deliberately dug his thumbs into her wrists as he handcuffed her. (*Id.*)

It is well-established that the Fourth Amendment's prohibition of unreasonable seizures includes the right to be free of seizures effectuated by excessive force. *Henry*, 652 F.3d at 531. But, less clear is whether unduly tight or forceful handcuffing constitutes excessive force in contravention of the Fourth Amendment. Whether an officer has used excessive force is judged by a standard of objective reasonableness and is a question of pure law. *Id.*; *see also Graham v. Connor*, 490 U.S. 386, 395 (1989). The reasonableness of an officer's actions is "not capable of precise definition or mechanical application." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). But rather, "[t]he inquiry requires analyzing the totality of the circumstances," *Plumhoff v. Rickard*, ___ U.S. ___, 134 S.Ct. 2012, 2020 (2014), and giving "careful attention to the facts and circumstances of each particular case." *Graham*, 490 U.S. at 396; *see also Clem v. Corbeau*, 284 F.3d 543, 550 (4th Cir. 2002).

In assessing the reasonableness of the force employed, the Court considers "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest." *Graham*, 490 U.S. at 396. "The extent of the plaintiff's injury is also a relevant consideration." *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003). Qualified immunity operates to protect

officers from the sometimes "hazy border between excessive and acceptable force." *Saucier*, 533 U.S. at 206. It is intended to protect officers from bad guesses in gray areas. *Bland v. Roberts*, 730 F.3d 368, 401 (4th Cir. 2013). And in the Fourth Circuit, how tight is too tight with respect to handcuffing is one such gray area.

Because the focus is on whether the officer had fair notice that his conduct was unlawful, reasonableness must be judged against the backdrop of the law at the time of the conduct. *Brosseau*, 543 U.S. at 198. "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or [Fourth Circuit] decision on point." *Oliver v. Woods*, 209 F.3d 1179, 1185 (10th Cir. 2000) (citations omitted); *see Wilson v. Layne*, 141 F.3d 111, 117 (4th Cir. 1998). While a decision directly on point is not required to put officers on notice of a "clearly established" right, existing precedent must have placed the statutory or constitutional question beyond debate. *Ashcroft v. al-Kidd*, ___ U.S. ___, 131 S. Ct. 2074, 2083 (2011); *see also Melgar v. Greene*, 593 F.3d 348, 358 (4th Cir. 2010). "The Supreme Court has cautioned against interpreting clearly established law too generally for fear of allowing plaintiffs 'to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.'" *Melgar*, 593 F.3d at 358 (quoting *Anderson*, 483 U.S. at 639). The "dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202; *see also Cooper v. Sheehan*, 735 F.3d 153, 158–59 (4th Cir. 2013). This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition. *Brosseau*, 543 U.S. at 198.

A survey of excessive force jurisprudence yields only two Circuit Courts of Appeals that have recognized as a general proposition that excessively tight or forceful handcuffing constitutes excessive force—the Third Circuit and the Sixth Circuit. *See, e.g., Kopec v. Tate*, 361 F.3d 772 (3d Cir. 2004) (recognizing excessively tight handcuffing constitutes excessive force), *cert. denied*, 543 U.S. 956 (2004); *Martin v. Heideman*, 106 F.3d 1308 (6th Cir. 1997) (construing "excessively forceful handcuffing" as excessive force claim). Recognizing that "[n]ot all allegations of tight handcuffing, however, amount to excessive force," *Lyons v. City of Xenia*, 417 F.3d 565, 575–576 (6th Cir. 2005), the Sixth Circuit articulated a test to judge whether a handcuffing claim may survive summary judgment. *Morrison v. Bd. of Trs.*, 583 F.3d 394, 401–402 (6th Cir. 2009). A plaintiff must offer sufficient evidence to create a genuine issue of material fact that: (1) the plaintiff complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced "some physical injury" resulting from the handcuffing. *Id.*

And even when a plaintiff makes this showing, a law enforcement officer may still be entitled to qualified immunity if it would not be apparent to a reasonable officer that he was violating the plaintiff's clearly established rights. *O'Malley v. City of Flint*, 652 F.3d 662, 671–672 (6th Cir. 2011) (granting qualified immunity because not clear to reasonable officer that failure to loosen handcuffs constituted excessive force where detainee with no obvious physical injury complained of tightness, but did not request handcuffs be loosened); *Lyons*, 417 F.3d at 575–576 (finding no excessive force where plaintiff offered no evidence that he told officers handcuffs were too tight and had no

14

obvious physical injuries); *Burchett v. Kiefer*, 310 F.3d 937, 944–45 (6th Cir. 2002) (granting qualified immunity because officer immediately removed handcuffs once plaintiff, who had been tightly handcuffed for three hours causing swelling and bruising, complained); *cf. Martin*, 106 F.3d at 1313 (denying qualified immunity because officers handcuffed plaintiff so tightly his hands became numb and swollen, then failed to respond to his complaints of pain until 35 minutes later).

While the Sixth Circuit's test provides some illumination in evaluating claims of tight handcuffing, it is not the type of binding precedent that would provide fair notice to law enforcement officers in this Circuit that excessively tight or forceful handcuffing necessarily violates the Fourth Amendment. In fact, case law from the Fourth Circuit tends to show the opposite. In *Carter v. Morris*, the Fourth Circuit held that the basis for the plaintiff's excessive force claim—that her handcuffs were too tight and that an officer pushed her legs as she got into the police car—was so insubstantial that it could not, as a matter of law, support her claim under the Fourth Amendment. 164 F.3d 215, 219 n.3 (4th Cir. 1999). In *Brissett v. Paul*, the district court's decision that a police officer did not use excessive force was affirmed because even though the plaintiff alleged that the officer pushed him into the squad car, handcuffed him, and held his arms in a painful position, he did not offer evidence that he sustained any major physical injury. 141 F.3d 1157, at *14–15 [published in full-text format at 1998 U.S. App. LEXIS 6824] (4th Cir. 1998) (table). Analyzing the excessive force claim in *Brissett* under the Fourth Amendment objective reasonableness standard, the appellate court agreed with the

district court that the minimal amount of force used by the police officer to effectuate the arrest was reasonable. *Id.*

Additionally, in *Cooper v. City of Virginia Beach*, the Fourth Circuit affirmed an award of qualified immunity at the summary judgment stage in an excessive force claim based on unduly tight handcuffing. 817 F. Supp. 1310 (E.D.Va. 1993), *aff'd*, 21 F.3d 421 (4th Cir. 1994). In that case, the plaintiff neither alleged, nor offered proof of any lasting or serious injury flowing from the use of handcuffs. *Id.* at 1319. The record indicated that the plaintiff was allegedly handcuffed so tightly that his hands almost immediately grew numb. *Id.* However, the plaintiff's deposition testimony indicated only that the handcuffs were too tight and hurt. *Id.* The court found the excessive force claim deficient because the plaintiff failed to offer sufficient evidence of actual injury. *Id.* Notably, the court also stressed that the handcuffing in itself was not unreasonable, particularly in light of the plaintiff's apparent intoxication. *Id.*

Squaring *Cooper* with the case at hand, Plaintiff's excessive force claim is virtually indistinguishable. She asserts that Deputy Vasquez's conduct constitutes excessive force because "he grabbed her and deliberately dug his thumbs into her wrist while handcuffing her" which caused bruising, as did the tightness of the handcuffs. (Opp'n Mem. 9.) The injuries that Deavers allegedly sustained during the handcuffing are superficial bruises and numbness in her right thumb. Plaintiff admits that these conditions resolved themselves and that no medical treatment was necessary. She alleges no significant physical harm from the incident, and the only evidence of any injury are four unauthenticated photographs purportedly portraying Plaintiff's superficial bruises.

16

In her opposition brief, Plaintiff refers to her testimony describing the forceful manner in which Deputy Vasquez handcuffed her—namely, Deputy Vasquez digging his thumbs into Plaintiff's wrists—but Plaintiff failed to include either an affidavit or deposition citation in support of her contention. When Deavers was arrested, there were approximately ten to fifteen bystanders, one of whom filmed the incident on his cell phone and submitted a sworn affidavit describing his observations. Conspicuously absent from this affidavit are any facts indicating that the force used by Deputy Vasquez in arresting Deavers was excessive. Nor does the video of Plaintiff's arrest support her excessive force claim.

Moreover, Plaintiff fails to offer evidence that Deputy Vasquez was aware that the handcuffs he placed on Deavers were excessively tight or hurtful. The video of Plaintiff's arrest taken by her friend depicts Deputy Vasquez placing the handcuffs on Plaintiff with her hands behind her back. No indication of pain or discomfort is evident. Plaintiff observes in her brief that "even when [Deputy Vasquez] had her safely in the back of his cruiser, he refused to loosen the handcuffs." (Opp'n Mem. 9.) Yet Plaintiff offers no evidence that she complained of the tightness of the handcuffs or asked Deputy Vasquez to loosen them. The only time Plaintiff complained of her discomfort was later in the custody of officers at the Rappahanock Regional Jail, after her interactions with Deputy Vasquez had ended. And furthermore, she cannot identify any individual to whom she complained. (Pl. Dep. 25:5–12.) Even if the law in the Fourth Circuit clearly established that unduly tight or forceful handcuffing alone, absent significant physical

injury, constituted excessive force, the record does not indicate that Deputy Vasquez was on notice that the manner in which he handcuffed Deavers was excessively forceful.

A survey of Fourth Circuit excessive force jurisprudence yields no North Star to guide law enforcement officers in securing arrestees, and Plaintiff's brief cites none. As the Supreme Court has pointed out, the above-referenced "cases taken together undoubtedly show that this area is one in which the result depends very much on the facts of each case. None of them squarely governs the case here." *Brosseau*, 543 U.S. at 201. They do, however, suggest that Deputy Vasquez's actions fell in the "hazy border between excessive and acceptable force," but by no means do the cases in the Fourth Circuit clearly establish that Deputy Vasquez's conduct violated the Fourth Amendment. *Id.* (quoting *Saucier*, 533 U.S. at 206). Because neither the United States Supreme Court, nor the Fourth Circuit have squarely addressed whether unduly tight or forceful handcuffing alone absent significant injury constitutes excessive force in violation of the Fourth Amendment, Deputy Vasquez cannot be charged with notice that the quantum of force used in this case crossed the constitutional line. Qualified immunity, therefore, shields Deputy Vasquez from liability for the excessive force claim under 42 U.S.C. § 1983 in Count Two.[9]

The remaining claims, malicious prosecution (Count One) and battery (Count Three), both hinge on application of the statutory and common law of Virginia. At its core, this case evolves from a complaint about a loud party and the actions taken by a

---

[9] While the evidence appears to weigh in favor of Deputy Vasquez, the Court declines to make a finding as to whether the deputy's conduct constitutes excessive force. This Court finds only that it would not have been obvious to a reasonable officer in Deputy Vasquez's position that his conduct violated the Fourth Amendment.

deputy sheriff to contain its participants. A significant issue at the epicenter of the controversy is Plaintiff's level of intoxication at the time of her encounter with the arresting officer, Deputy Vasquez. The residual claims will require the interpretation of Virginia statutes which define the contours of public behavior—daily tasks in state courts. It is also apparent from a review of the record evidence that the remaining claims would support modest damages at best.[10]

Title 28 U.S.C. § 1367, creating supplemental jurisdiction[11], vests federal courts with "discretion to retain *or* dismiss state law claims when the federal basis for an action drops away." *Shanaghan v. Cahill*, 58 F.3d 106, 109 (4th Cir. 1995) (emphasis in original). "Recent case law has emphasized that trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Id.* at 110 (citing *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993)). After carefully reviewing all the factors that inform the exercise of this discretionary determination under 28 U.S.C. § 1367(c)(3), this Court will decline to retain supplemental jurisdiction over this local fracas. None of the remaining issues involve federal policy, and all critical witnesses on both sides appear to be based in Spotsylvania County. This Court will therefore remand the remainder of this action back to the Spotsylvania County Circuit Court, from which it was removed.

---

[10] It must also be regrettably noted that Plaintiff's counsel has been challenged in navigating the rules and procedures long established in this District Court.
[11] "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related . . . that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a).

19

## IV. CONCLUSION

In sum, the Court finds that qualified immunity shields Deputy Vasquez from liability for excessive force under 42 U.S.C. § 1983 because the law in the Fourth Circuit does not clearly establish as a general proposition that unduly tight or forceful handcuffing without more violates the Fourth Amendment. Accordingly, Defendant Homero Vasquez's Motion for Summary Judgment (ECF No. 31) will be granted in part. An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: Nov. 5, 2014
Richmond, Virginia